UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **TONY PARKER,**<br>        Plaintiff,<br><br>v.<br><br>**MARTIN J. O'MALLEY,**<br>**Commissioner of the Social**<br>**Security Administration,**<br>        Defendant. | **Case No. 4:22-cv-999-CLM** |

## MEMORANDUM OPINION

Tony Parker seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Parker's application in an opinion written by an Administrative Law Judge ("ALJ").

Parker argues that the ALJ erred in: (1) evaluating opinion evidence from his treating physicians, consultative examiners, and State agency medical consultants; (2) assessing Parker's testimony at the ALJ hearing; and (3) in relying on the vocational expert's testimony. The court agrees with Parker that the ALJ erred in evaluating the testimony of State agency consultant, Dr. Robert Estock. So the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner.

**I.   STATEMENT OF THE CASE**

    **A.   Parker's Disability, as told to the ALJ**

Parker was 53 at the time of the ALJ hearing. (R. 61). He went to technical school to learn how to be an electrician and last worked as a contractor on the railroad. (*Id.*).

At the ALJ hearing, Parker testified that he stopped working because of his shoulder, which he has had five surgeries on. (R. 61–62). Parker also

suffers from back pain, but unlike with his shoulder, he hasn't had back surgery or injections in his back. (R. 62). Because of Parker's shoulder pain, he can lift very little with his right arm. (*Id.*).

Parker also suffers from depression and takes venlafaxine, the generic version of Zoloft, to treat it. (R. 63). This prescription helps lessen Parker's depression and his primary care doctor last changed the dosage about three years before the ALJ hearing. (*Id.*).

Parker lives by himself but next door to his parents. (R. 64, 686). Parker has a driver's license and drives himself to the doctor, which is about 15 to 20 minutes away from his house. (R.64). Parker doesn't do yard work or mop. (*Id.*). But he does do his own laundry, bathes himself, and spends the day cleaning his house. (R. 64–65).

**B. Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |

| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
|---|---|---|
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Parker's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Parker applied for disability insurance benefits and a period of disability in January 2020, claiming that he could not work because of several ailments, including right shoulder pain, arthritis in his knees, high blood pressure, anxiety, and depression. After receiving an initial denial in September 2020, Parker requested a hearing, which the ALJ conducted in November 2021. The ALJ ultimately issued an opinion denying Parker's claims in December 2021.

At Step 1, the ALJ determined that Parker was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined Parker suffered from the following severe impairments: degenerative disc disease; torn right rotator cuff, status

post release on right; trigger finger right long finger with release; and depression.

At Step 3, the ALJ found that none of Parker's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Parker's residual functional capacity.

The ALJ determined that Parker had the residual functional capacity to perform light work with these added limitations:

- Parker can frequently climb ramps and stairs, balance as that is defined in the SCO, stoop, crouch, and kneel.

- Parker should never climb ladders, ropes, or scaffolds, nor should he crawl.

- Parker can occasionally reach overhead with his right upper extremity.

- Parker can occasionally handle and finger with his right upper extremity.

- Parker can have only occasional exposure to extremes of cold and full body vibration.

- Parker should have no exposure to hazards such as unprotected heights or hazardous machinery.

- Parker would be able to understand, remember, and carry out simple instructions and tasks.

- Parker can tolerate changes in the workplace that are infrequent and gradually introduced.

- Parker can have occasional work-related interactions with supervisors, co-workers, and the general public.

At Step 4, the ALJ found that Parker could not perform his past relevant work. At Step 5, the ALJ determined that Parker could perform jobs, such as sandwich board carrier, usher, and tanning salon attendant that exist in significant numbers in the national economy and thus Parker was not disabled under the Social Security Act.

Parker requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   LEGAL ANALYSIS

Parker makes three arguments for why the ALJ erred. First, he argues that the ALJ erred in evaluating opinion evidence from his treating physician, consultative examiners, and the State agency medical consultants. Second, he asserts that the ALJ mischaracterized his hearing testimony. Finally, he contends that the ALJ erred in relying on the testimony of the vocational expert to find that Parker was not disabled.

The court agrees with Parker that the ALJ reversibly erred in evaluating Dr. Robert Estock's opinion evidence. So the court needn't discuss Parker's other arguments for reversal. Before explaining how the ALJ erred, the court will recap Dr. Estock's findings.

1. <u>Background</u>: Dr. Estock reviewed the medical evidence related to Parker's mental impairments at the initial level of the SSA application process. Dr. Estock found that Parker could carry out simple instructions and sustain attention to familiar tasks for extended periods, but not detailed/complex instructions. (R. 183). Parker would also benefit from a flexible schedule and would be expected to miss 1-2 days of work per month because of a depressed or anxious mood. (*Id.*). And Parker would function best with his own work areas apart from others to help minimize distraction. (*Id.*). Parker could tolerate ordinary work pressures but should avoid excessive workloads, quick decision making, rapid changes, and multiple demands. (*Id.*). According to Dr. Estock, Parker would benefit from regular rest breaks and a slowed pace but still could maintain a work pace consistent with the mental demands of competitive level work. (*Id.*). Dr. Estock also found that Parker's contact with the general public should be casual and that his non-intensive interaction with coworkers would not result in distractions to others. (R. at 184). Finally, Dr. Estock determined that Parker could be expected to respond appropriately to mild work pressure. (*Id.*).

Under the regulations that apply to Parker's application for benefits, an ALJ must articulate how persuasive she finds all the medical opinions and prior administrative findings in the claimant's record. *See* 20 C.F.R. § 404.1520c(b). The ALJ should focus on the persuasiveness of the opinion by looking at the opinion's supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, consider other factors such as the medical source's relationship with the claimant and specialization. *See id*. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his . . . prior administrative medical finding(s), the more persuasive the . . . prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). And "[t]he more consistent . . . prior medical administrative findings(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the . . . prior administrative medical findings will be." 20 C.F.R. § 404.1520c(c)(2).

Applying these factors, the ALJ found that Dr. Estock's opinions were "vague and do not provide meaningful insight into [Parker's] ability to perform basic mental job skills." (*Id.*). She also noted that these opinions

"include items related to conditions of the work environment such as supervisory feedback." (*Id.*). But explained "issues such as supervisory style are idiosyncratic elements of particular jobs, not general occupational guidelines or requirements." (*Id.*). According to the ALJ, "every worker would prefer a supportive and non-confrontational work environment, but the personality and management style of a worker's supervisor is not an aspect of the circumstances of employment that could realistically be covered by the ALJ or vocational expert in the context of a disability hearing." (*Id.*). The ALJ also found that "descriptions such as casual, supportive, limited, tactful, and non-confrontational are vague, open to individual interpretation and provide no meaningful information as to the claimant's abilities." (*Id.*).

The ALJ then found "the number and proximity of coworkers is another area that is beyond the control and professional knowledge of a vocational expert testifying regarding available work." (*Id.*). Finally, the ALJ found "no support for the assessment that [Parker] would miss 1-2 days of work." (*Id.*). According to the ALJ, that was because there was "no evidence in the file to suggest that [Parker] fails to keep his medical appointments or otherwise attend to his other responsibilities." (*Id.*). So the ALJ was "overall generally persuaded" by Dr. Estock's assessments "as to the general tenor suggested" but "not persuaded by the precise language and limitations suggested as these are inconsistent with general occupational guidelines." (R. 47).

2. <u>ALJ's error</u>: The ALJ's sole reason for rejecting Dr. Estock's opinion that Parker would miss 1-2 days of work a month is that "***no evidence*** in the file" suggested that Parker has failed to keep his medical appointments or attend to his other responsibilities. (*Id.* (emphasis added)). But, as Parker points out, medical records from Harbin Clinic suggest that Parker did miss a medical appointment in August 2021 without explanation. (R. 127).

The Commissioner concedes that there may be evidence of a missed appointment in the record but argues that this doesn't warrant reversal because (a) Parker missing one appointment doesn't mean that he'll miss more than one day of work a month, and (b) the record shows that Parker attended many medical appointments during the relevant period.

The court sees at least two problems with the Commissioner's argument. First, while missing one doctor's appointment doesn't necessarily mean that Parker will miss 1-2 days of work a month, Parker's ability to keep his doctor's appointments is what the ALJ relied on to discount Dr. Estock's determination that Parker would miss 1-2 days of work per month. So substantial evidence must support the ALJ's finding that no evidence suggested that Parker failed to keep his medical appointments for the ALJ's rejection of this opinion to be valid.

Second, though the record suggests that Parker attended many scheduled doctor's appointments during the relevant period, the ALJ's rationale for rejecting Dr. Estock's opinion wasn't that Parker made most of his appointments. It was that there was ***no evidence*** that Parker failed to keep his medical appointments. The records from Harbin Clinic contradict this finding because they provide evidence that Parker missed an appointment without rescheduling it or providing notice that he wouldn't be able to attend the appointment. So the ALJ erred in stating that there was no evidence that Parker failed to keep his medical appointments.

The ALJ's factual error may have made a difference in how persuasive the ALJ found Dr. Estock's opinion. To be sure, the ALJ may have considered one missed appointment insignificant. But the ALJ may have also viewed the missed appointment as supporting Dr. Estock's statement that Parker would miss 1-2 days of work per month. The court cannot speculate how evidence of the missed appointment would affect the ALJ's evaluation of Dr. Estock's opinion without re-weighing the evidence, which "would invade[ ] the province of the ALJ." *Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007). Plus, how persuasive the ALJ found Dr. Estock's opinion that Parker will miss 1-2 days of work a month was important because the vocational expert testified that Parker couldn't maintain employment if he were to miss more than one day of work per month. (R. 80–81). So if the ALJ had found Dr. Estock's opinion persuasive, she very well may have found Parker disabled. The court will thus remand this case to the Commissioner for the ALJ to reconsider Dr. Estock's opinion in light of the evidence of Parker's missed medical appointment.

## IV. CONCLUSION

For the reasons stated above, the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner for the ALJ to reassess Dr. Estock's opinion. The court will enter a separate final order that closes this case.

**Done** on February 1, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE